IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CYNTHIA SMITH,                                    6:11-cv-01263-MA

                         Plaintiff,              OPINION AND ORDER

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

TIM WILBORN
P.O. Box 370578
Las Vegas, Nevada 89137

     Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

KEITH SIMONSON
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
1301 Young Street, Suite A-702
Dallas, Texas 75202

     Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Cynthia Smith, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). See 42 U.S.C. § 423. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I AFFIRM the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB on June 7, 2007, alleging disability due to a "broken back t12 compound fracture." Tr. 139. Her application was denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on April 1, 2010, at which plaintiff was represented by counsel and testified. In addition, plaintiff's husband, Robert Smith, testified on plaintiff's behalf. Vocational Expert (VE) Frank Lucas was present throughout the hearing and testified.

On September 20, 2010, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. After the Appeals Council declined review of the ALJ's decision, plaintiff timely filed a complaint in this court.

## FACTUAL BACKGROUND

Born on November 9, 1957, plaintiff was 45 years old on the alleged onset date of disability and 52 years old on the date of

the hearing.   Plaintiff has a high school diploma, and past relevant work as a bank teller, insurance clerk, cashier/checker, and nail technician.  Tr. 23, 145.

Plaintiff alleged her back fracture became disabling on August 30, 2003.  In addition to the hearing testimony, both plaintiff and her husband submitted Adult Function Reports.  James Nelson, M.D., plaintiff's primary treating physician, submitted an opinion. Suzanne El-Attar, M.D., and Kim Webster, M.D., who each examined the plaintiff, also submitted separate opinions.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).   Each step is potentially dispositive.  The claimant bears the burden of proof at Steps One through Four.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform.  See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date, January 1, 2004.  See 20 C.F.R. § 404.1571 et seq.; Tr. 17.

At Step Two, the ALJ determined that plaintiff's status-post burst fracture at T-12 was a severe impairment. See 20 C.F.R. §§ 404.1520(c); Tr. 17. In addition, the ALJ found that plaintiff's asthma, gastroesophogeal reflux disease, celiac disease, and anxiety were non-severe impairments that did not cause more than minimal limitations in her ability to perform work-related activities. Tr. 18.

At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; Tr. 17.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). The ALJ found that plaintiff is capable of frequent balancing and climbing stairs or ramps, but is limited to occasional stooping, crawling, and climbing ladders, ropes, or scaffolds. Finally, the ALJ found that plaintiff should avoid more than frequent exposure to cold temperatures and irritants, such as fumes, gases, dusts, and other chemicals. Tr. 19-23.

At Step Four, the ALJ found plaintiff capable of performing past relevant work as a bank teller, insurance clerk, and cashier/clerk. See 20 C.F.R. § 404.1565; Tr. 23-24. Accordingly,

the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff argues that the ALJ erred in three ways.  First, plaintiff maintains that the ALJ erroneously discredited her testimony.  Second, plaintiff argues that the ALJ erred in discounting the opinions of Drs. Nelson and El-Attar in favor of Dr. Webster's opinion.  Third, plaintiff maintains that the ALJ improperly discredited the lay witness testimony of plaintiff's husband, Robert Smith.  Accordingly, plaintiff argues that the vocational hypothetical was invalid because it did not include the limitations described in the discredited testimony.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's

decision must be upheld.  <u>Andrews</u>, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.    Rejection of Plaintiff's Testimony

Plaintiff first argues that the ALJ improperly rejected her testimony.   The  ALJ  found  plaintiff  not  credible  because inconsistent statements reduced the reliability of her claims, she was  not  entirely  compliant  with  medical  treatment,  objective medical evidence did not support the extent of her allegations, and plaintiff's activities of daily living were inconsistent with the extent of plaintiff's claimed disability.

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis.  20 C.F.R. §§ 404.1529, 416.929.   First,  the  claimant  must  produce  objective  medical evidence  of  an  underlying  impairment  that  could  reasonably  be expected to produce the symptoms alleged.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity  of  his  symptoms  only  by  offering  specific,  clear  and convincing reasons for doing so.  <u>Id.</u> at 1281.

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

In her Function Report, plaintiff stated that her daily routine was to wake, take pain medication with juice, drink coffee, wait for her pain medication to kick in, eat breakfast, shower, dress, do dishes, take more pain medication, and watch television while reclining. Tr. 170. Plaintiff reported that during the day she gives water and food to two cats and two dogs, and cooks simple meals. Plaintiff reported that she can still do laundry, but that it takes much longer than in the past, and required "plenty of pain meds." Tr. 172. Plaintiff reported that she went outside once or twice per month, including one trip to the grocery store per month. Tr. 173. When going out, plaintiff regularly drives alone. Id. Plaintiff reported that her hobbies were reading and watching television in a reclined position, and that her social activities are limited to a friend coming to her house to watch a movie once per month. Tr. 174. As to her limitations, plaintiff reported

that her "memory is bad because of pain meds," she should not lift objects, and could not engage in many activities without substantial pain. Tr. 175. Plaintiff reported that she could only walk "a couple of blocks." Id.

At the hearing, plaintiff testified that her back pain was the biggest obstacle to work. Tr. 47-48. Plaintiff additionally testified that she gets anxious when she is around people in public. Tr. 49. Plaintiff reported that her daily activities primarily consist of reclining with a heating pad, with occasional breaks to cook a meal, walk the dogs for approximately half an hour, or do laundry. Tr. 43, 49-50. Plaintiff reported that she traveled by car to California once per year to visit family, but used a heating pad in the car and required frequent stops. Tr. 42, 50-51. Plaintiff additionally reported that she babysits her seven year-old granddaughter, but that she could no longer do it alone because her granddaughter had grown. Tr. 58.

The ALJ found plaintiff made inconsistent statements about the extent of her limitations throughout the record. As the ALJ noted, plaintiff alleged that her pain medication caused lapses in memory, but repeatedly told Dr. Nelson that she was experiencing no side effects from her pain medication. E.g., Tr. 175, 232, 245, 495.

Additionally, the ALJ noted that plaintiff told Vocational Rehabilitation Services on March 26, 2008 that she "would prefer to work [full time] if the pay and benefits warrant it, otherwise

[part time] to keep her [social security] claim intact." Tr. 593. She stated that she prefers four to eight hour shifts, Monday through Friday, where she can work alone, with little supervision, and with ergonomic equipment. Id.   The next week, however, plaintiff expressed a "disinterest in work." Id.   I find these statements to Vocational Rehabilitation Services to be particularly strong support for the ALJ's credibility determination.

The ALJ also noted that Dr. Nelson's records show that plaintiff represented that her pain was adequately controlled with medication.   Within one year of her accident, plaintiff reported that she was feeling "fairly well." Tr. 254.   On May 12, 2006, plaintiff denied progressive loss of function, although she continued to struggle with pain. Tr. 240. This trend continued on March 6, 2008, when plaintiff reported that she was "comfortable just staying on a baseline medication regimen to control the pain and make her functional," and Dr. Nelson observed that plaintiff was "much more functional on the medication than off." Tr. 500. The ALJ's finding that these statements were inconsistent with plaintiff's testimony that her back pain was disabling is supported by substantial evidence in the record.

The ALJ also discredited plaintiff's testimony because plaintiff had instances of noncompliance with recommended treatment. Tr. 21, 23. Noncompliance with medical treatment is a proper basis for discrediting a claimant's testimony about the

9 – OPINION AND ORDER

severity of symptoms.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  On more than one occasion, Dr. Nelson noted that plaintiff was not fully compliant with recommended aerobic exercises and postural reeducation.  Tr. 233, 433, 495-96.  On October 23, 2008, Dr. Nelson emphasized the importance of this treatment in reporting that plaintiff "has not improved her physical conditioning at all. Her posture is still poor and this is likely contributing fairly significantly to her ongoing pain symptoms."  Tr. 495.  At the same appointment, Dr. Nelson stated that plaintiff "needs to work on her postural strengthening program and this has been reiterated multiple times, but she seems to make no progress.  The importance of this has been reemphasized, and she understands.  She is likely to have a persistent chronic pain in this region if she does not muscularly correct some of her posture."  Tr. 496.  Thus, the ALJ could reasonably discredit plaintiff's testimony on this basis.

The ALJ also noted that the objective medical evidence did not support the full extent of plaintiff's alleged symptoms.  Tr. 20. This finding is also supported by substantial evidence in the record.  While, as the ALJ noted, imaging shows that plaintiff has a fractured T-12 with incomplete healing, Dr. Nelson noted that her objective examination was "quite impressive actually."  Tr. 240. Additionally, while performing an examination in preparation for plaintiff's disability determination, Dr. El-Attar noted that other than "some decreased extension of her back and decreased movement

in her hips . . . her range of motion is quite good." Tr. 402.
Finally, in a Comprehensive Orthopedic Evaluation, Dr. Webster
noted that plaintiff had "some of the most amazing range of motion
that I have seen in a long time," without apparent pain during
stretching that would normally put strain on the vertebral body.
Tr. 610. Thus, the ALJ's finding that objective medical evidence
did not fully support the extent of plaintiff's alleged limitations
was reasonable and supported by substantial evidence in the record.

Finally, the ALJ found that plaintiff's claimed activities
were inconsistent with the full extent of her alleged limitations.
Tr. 20. This finding is supported by substantial evidence in the
record. Specifically, plaintiff's admission that she babysits her
seven year-old granddaughter - albeit with some limitation - is
inconsistent with the largely sedentary daily activities plaintiff
described in her Function Report and at the hearing. Plaintiff
reported to Dr. Nelson on November 11, 2004 that babysitting
required activities like bending and lifting. Tr. 252.
Additionally, at an appointment on March 6, 2007, plaintiff
complained of increased soreness because she and her husband were
remodeling rental properties in preparation of selling them. Tr.
233. The ALJ reasonably found that plaintiff's activities were
inconsistent with her testimony as to the extent of her symptoms
and limitations. Together, these reasons constitute clear and
convincing reasons to discredit plaintiff's testimony.

## II.  **Rejection of Medical Testimony**

Plaintiff argues that the ALJ improperly discredited the medical opinions of Drs. Nelson and El-Attar.  Generally, more weight is given to the opinion of a physician who treats the claimant than to that of a physician who merely examines the claimant.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician.  Id. 830-31.  Where a treating physician's opinion is contradicted by that of an examining physician, the ALJ may reject the treating physician's opinion only by providing specific and legitimate reasons supported by substantial evidence in the record.  Id.  "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).  "'Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'"  Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)).

The ALJ gave the opinion of Dr. Webster greater weight than the opinions of Drs. Nelson and El-Attar.  Dr. Nelson was plaintiff's primary treating physician with regard to her back

problems, and Drs. Webster and El-Attar examined plaintiff in relation to her disability claim.

In Dr. El-Attar's examination of plaintiff, the doctor ran a series of tests designed to measure plaintiff's neurological and musculoskeletal integrity. Tr. 402. Dr. El-Attar noted that plaintiff was in mild distress and pain during the exam. Id. Dr. El-Attar found that plaintiff had a normal neurologic exam. Id. With regard to the musculoskeletal exam, Dr. El-Attar found that plaintiff had good strength in all muscle groups with some mild give-way weakness and a mildly ataxic gait. Id. Dr. El-Attar also found that there is some decreased extension of plaintiff's back and decreased movement in her hips, but her overall range of motion was "quite good." Id. Dr. El-Attar also noted "some obvious tenderness to palpation along the lower thoracic and upper lumbar regions as well as some mild paraspinal muscular tenderness." Id. Dr. El-Attar concluded, however, that plaintiff was fully disabled because she is "quite painful [in] most positions," cannot stand or sit for more than five minutes at a time without changing positions, cannot walk for more than half of a block, and cannot do any significant lifting. Id.

Dr. Nelson submitted a check-the-box form wherein he concurred with the opinion of Dr. El-Attar, and found that plaintiff could not perform light work. Tr. 522-24. Dr. Nelson opined that plaintiff was moderately limited in her ability to

maintain attention and concentration for extended periods, "moderately severely" limited in her ability to perform activities within a schedule, and severely limited in her ability to complete a normal workday and workweek without interruptions from medically based symptoms. Tr. 525.

Dr. Webster conducted a Comprehensive Orthopedic Evaluation of plaintiff. Tr. 608-11. Dr. Webster found that plaintiff was in no acute distress and moved around easily. Tr. 609. Notably, Dr. Webster found that plaintiff had remarkable range of motion with none of the pain that would have been expected with such motion. Tr. 610. Dr. Webster found that plaintiff had discomfort to minor percussion and palpation in the thoracic spine, and when rotating the shoulders while standing. Id. Dr. Webster noted, however, that such rotational pain was not to be expected with the nature of plaintiff's injury. Id. Accordingly, Dr. Webster concluded that plaintiff gave a "very inconsistent exam that to me indicates the pain is not from any structural or physiologic component in her thoracic spine." Tr. 611. Dr. Webster found that there was "no consistent objective evidence to limit standing, walking, sitting, lifting or carrying both occasionally or frequently. There is no objective evidence for postural, manipulative, visual, communicative or environmental limitations." Id.

Dr. Nelson then submitted an additional opinion rebutting Dr. Webster's evaluation. Tr. 623-24. Dr. Nelson found the tone of

Dr. Webster's opinion "not professional," and questioned the validity of Dr. Webster's range of motion measurements.    Tr. 624. Dr. Nelson agreed with plaintiff's statement that she could work 20 hours per week at a sedentary job.    Id.    After a review of the record, I conclude that the ALJ gave sufficient reasons for discrediting the opinions of Drs. El-Attar and Nelson.

Dr. El-Attar's opinion was contradicted by Dr. Webster's. Thus, the ALJ was required to provide specific, legitimate reasons for discrediting Dr. El-Attar's opinion.    See Lester, 81 F.3d at 830.    I find the ALJ did so.    The ALJ discredited Dr. El-Attar's opinion because it relied extensively on plaintiff's subjective reporting.    Tr. 21.    A doctor's opinion may be discredited for this reason.    Bray, 554 F.3d at 1228.    Dr. El-Attar's conclusion makes clear that the doctor's ultimate finding of disability was based on plaintiff's subjective reports of pain in most positions, inability to sit or stand for more than five minutes without changing position, and inability to walk more than half of a block.    Tr. 402.    The remainder of Dr. El-Attar's findings were similar – though not identical - to Dr. Webster's, especially insofar as she also found that plaintiff had good range of motion.    Because the ALJ properly discounted plaintiff's testimony, Dr. El-Attar's reliance on such testimony was a specific and legitimate reason, supported by substantial evidence to discount that opinion.

The ALJ discredited Dr. Nelson's opinions because they were inconsistent with his treatment records, and were based, at least in part, on plaintiff's self-reported symptoms. Tr. 22. The ALJ specifically rejected Dr. Nelson's first opinion because it was not accompanied by specific functional limitations. Id. Because Dr. Webster's opinion contradicted Dr. Nelson's, the ALJ was required to provide specific and legitimate reasons for discrediting Dr. Nelson's opinions. See Lester, 81 F.3d at 830.

The ALJ could reasonably reject Dr. Nelson's first opinion because it was not accompanied by any functional limitations. In this opinion, Dr. Nelson merely checked boxes that indicated that plaintiff could not perform light work, had a moderate limitation as to her ability to maintain attention for extended periods, a "moderately severe" limitation in her ability to perform activities punctually and within a schedule, and a severe limitation as to her ability to complete a normal workday and workweek without interruptions from medically based symptoms. Tr. 524-25. Notably, however, Dr. Nelson provided nothing to tie these limitations to any particular symptoms or conditions. This is precisely the type of brief, conclusory opinion the ALJ need not credit. See Chaudry, 688 F.3d at 671.

The ALJ also reasonably concluded that Dr. Nelson's opinions were inconsistent with his treatment notes and the record as a whole. Contrary to plaintiff's assertion, the ALJ specifically

16 - OPINION AND ORDER

discounted Dr. Nelson's opinion because it was inconsistent with his own treatment notes. Tr. 22. The ALJ noted that Dr. Nelson's treatment notes indicated that plaintiff was free from cognitive fog or any other mental limitations, which the ALJ found inconsistent with Dr. Nelson's December of 2009 opinion that plaintiff had moderate concentration limitations. Tr. 22, 232, 245, 251, 495, 525. While Dr. Nelson frequently noted that plaintiff's back pain was persistent, he also noted that plaintiff was functional on her medication regimen. Tr. 251, 254, 500. Additionally, the ALJ noted that Dr. Nelson's opinion that plaintiff could work only 20 hours per week is inconsistent with her statement to Vocational Rehabilitation Services that she would work 40 hours per week for the right compensation and benefits. Tr. 22, 593, 624. Because the ALJ's findings are supported by substantial evidence, the ALJ permissibly cited inconsistency between Dr. Nelson's opinions and chart notes as a basis for discrediting his opinions.

Finally, the ALJ reasonably discounted Dr. Nelson's opinions because they were based, at least in part, on plaintiff's subjective complaints. Dr. Nelson rebutted Dr. Webster's evaluation and opinion by writing:

> I reviewed the findings of the SSI evaluation and I would disagree with the evaluating position. There is specific errors which the patient can corroborate with regard to specifics. In my opinion however the tone of the evaluation is not professional. He notes "several

17 - OPINION AND ORDER

injections of a cement-like substance into the area of the compressed vertebral body) he also notes that she came in with a "bunch of pills" which she states she did not.  He notes that she was able to extend 30-40° and he reports using a nurse however am not sure if he's talking about thoracic range of motion or lumbrosacral range of motion he does not indicate trial inclinometer.  She also states the range of motion examination did not occur in this fashion she has not had that motion and this is consistent with our prior examination.

In summary the patient in my opinion is significantly limited.  Some of this is by her own veracity, she feels she could probably work about 20 hours in a week and a very sedentary level and neck and I would concur with the lack of ability for any repetitive use the timeline and the fact that she would be limited significantly by pain based on the objective evidence of a prior T12 compression/burst fracture.

Tr. 624 (errors in original).  In addition to the reasons described above, the ALJ reasonably discounted this opinion because it, by its own admission, relies on plaintiff's subjective self-reporting. I also note that Dr. Nelson's opinion is at times incorrect and, at best, confusing.[1]

The ALJ's finding that Dr. Nelson's opinions relied on plaintiff's self-reporting is further supported by Dr. Nelson's March 6, 2008 note that "[i]t has been approaching five years now

---

[1] Contrary to Dr. Nelson's assertion, Dr. Webster did not report that plaintiff arrived with "a bunch of pills," but rather stated that the records reviewed included a "bunch of bills." Tr. 608, 624.  Additionally, Dr. Nelson criticized Dr. Webster for not using a trial inclinometer, when, in fact, Dr. Webster's report states in the second sentence that "[a]ll measurements were performed in accordance with the AMA Guidelines using dual inclinometers and goniometer." Tr. 608, 624.  These inaccuracies reflect poorly on the thoroughness with which Dr. Nelson reviewed Dr. Webster's report.

since the original compression deformity and a couple of years status post a vertebroplasty, and ultimately it is unclear to me why this is still hanging on." Tr. 500. It is clear Dr. Nelson was relying heavily on plaintiff's subjective complaints. As discussed above, the ALJ appropriately discredited plaintiff's subjective testimony, and thus properly discounted Dr. Nelson's opinions on this basis. I conclude that these reasons together constitute specific and legitimate reasons, supported by substantial evidence in the record, to reject Dr. Nelson's opinions. The ALJ permissibly weighed the medical testimony.

## III. **Rejection of Lay Testimony**

Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). To discount lay witness testimony, the ALJ must give reasons that are germane to the witness. Id.

Plaintiff's husband submitted a Third Party Function Report and testified at the hearing. Mr. Smith's Third Party Function Report was largely consistent with plaintiff's. Tr. 162-69. At the hearing, Mr. Smith described plaintiff's activities of daily living and his observations of the extent of plaintiff's back pain. Tr. 62-67.

The ALJ summarized Mr. Smith's testimony, and largely discussed Mr. Smith's testimony alongside plaintiff's. Tr. 20, 23.

19 - OPINION AND ORDER

Because Mr. Smith's testimony was largely consistent with plaintiff's, many of the ALJ's reasons for discounting plaintiff's testimony apply with similar force to Mr. Smith's testimony. The limitations described by Mr. Smith were inconsistent with plaintiff's activities, compromised by plaintiff's inconsistent statements, and are not fully supported by the medical record. Where a lay witness's testimony is similar to the claimant's, and the ALJ properly discounted the plaintiff's testimony, "it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony." Valentine v. Comm'r Soc. Sec. Admin, 574 F.3d 685, 694 (9th Cir. 2009). I conclude that the ALJ properly rejected Mr. Smith's testimony.

Even if the ALJ should have separately discussed Mr. Smith's testimony, any alleged error was harmless because Mr. Smith's testimony largely parroted plaintiff's. Because Mr. Smith did not describe any limitations beyond those described by plaintiff, such error was inconsequential to the ultimate nondisability determination. See Stout v. Comm'r, Soc. Sec. Admin, 454 F.3d 1050, 1055 (9th Cir. 2006).

IV. **Adequacy of the Vocational Hypothetical**

A vocational hypothetical is sufficient if it includes all of the claimant's limitations that are supported by substantial evidence in the record. See Bayliss, 427 F.3d at 1217-18. An ALJ

may exclude limitations unsupported by substantial evidence in the record. Id.

I have concluded that the ALJ properly discredited plaintiff's testimony, Drs. Nelson and El-Attar's opinions, and Mr. Smith's lay witness testimony. The limitations included in the RFC and hypothetical were those that the ALJ found to be credible and supported by substantial evidence in the record. Thus, the hypothetical was sufficient, and it was proper for the ALJ to rely on the VE's answer. Id.

### CONCLUSION

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this _17_ day of January, 2013.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge